FILED
MAR 19 2024
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 4:24-cr-028 |
| v. | INDICTMENT |
| WILLIAM JACK BERG,<br>Defendant. | T. 18 U.S.C. § 981(a)(1)(C)<br>T. 18 U.S.C. § 982(a)(1)<br>T. 18 U.S.C. § 982(b)(1)<br>T. 18 U.S.C. § 1343<br>T. 18 U.S.C. § 1957<br>T. 21 U.S.C. § 853(p)<br>T. 28 U.S.C. § 2461(c) |

**THE GRAND JURY CHARGES:**

## Introduction

At all times material to this indictment:

1. The defendant, WILLIAM JACK BERG, was a resident of the Urbandale and Waukee areas, in the Southern District of Iowa.

2. BERG sold life insurance, annuities, and similar products to individuals in Central Iowa as well as other regions of the United States. BERG also acted as a financial advisor to various individuals in Central Iowa and other regions of the United States.

3. BERG created and registered several business entities in the State of Iowa, including Berg Insurance Advocates Inc. and W Holdings of Iowa, LLC ("W Holdings of Iowa"). BERG filed organization documents with the Iowa Secretary of State for W Holdings of Iowa in February 2019 and was continuously the sole member of W Holdings of Iowa. In August 2020, BERG filed a resolution with the Iowa

1

Secretary of State indicating that W Holdings of Iowa also adopted the name Excel Performance Management. The Iowa Secretary of State dissolved W Holdings of Iowa effective September 7, 2021, for failure to deliver the 2021 Biennial Report as required by law.

4. BERG opened and utilized various bank accounts under the names of these entities. BERG was the sole owner and signer with authority on these bank accounts.

5. "Investors" were individuals who used BERG as a financial advisor and who provided money to BERG for the stated purpose of BERG investing the monies in purported legitimate investment companies for the benefit of the Investors.

## The Scheme and Artifice to Defraud

6. From at least about January 2019, and continuing through at least on or about May 2023, in the Southern District of Iowa and elsewhere, WILLIAM JACK BERG, defendant herein, knowingly devised, intended to devise, and participated in a scheme and artifice to defraud Investors, and to obtain money from Investors by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

7. It was part of the scheme that WILLIAM JACK BERG would meet with individuals to whom BERG had previously sold life insurance, annuities, or similar products and BERG would foster a relationship with these individuals to become a trusted advisor concerning financial matters.

8. It was further part of the scheme that WILLIAM JACK BERG suggested, recommended, and encouraged Investors to take money out of Investors' existing investments or accounts and provide the monies to BERG for investment by "W Holdings of Iowa" and "Excel Performance Management".

9. It was further part of the scheme that WILLIAM JACK BERG falsely represented to Investors that W Holdings of Iowa and Excel Performance Management were established investment companies through which the Investors' monies would be invested for the benefit of the Investors. In reality, these entities were created by BERG, wholly controlled by BERG, and only BERG was involved with them. BERG did not inform Investors that BERG was the only person behind W Holdings of Iowa and Excel Performance Management. BERG did not inform the Investors that, as BERG well knew, BERG would not be investing their funds as BERG stated and represented to the Investors.

10. It was further part of the scheme that WILLIAM JACK BERG sometimes provided Investors with a typed document styled as an "investment agreement" that purported to memorialize the Investor's investment of funds into W Holdings of Iowa or Excel Performance Management and outline the agreement of the parties, including that the money would be invested in various asset classes. Investors signed the agreement and BERG signed as a representative of W Holdings of Iowa or Excel Performance Management. These "investment agreements" contained false statements. As BERG well knew, the Investor's funds would not be

invested. Instead, BERG knew that BERG would spend the Investors' funds for unauthorized purposes detailed in paragraphs below.

11.     It was further part of the scheme that WILLIAM JACK BERG would direct Investors to provide BERG checks made payable to "W Holdings of Iowa" or "Excel Performance Management" for the purpose of funding the Investors' purported investments. BERG also directed an Investor to wire monies to an account controlled by BERG for this same purpose.

12.     It was further part of the scheme WILLIAM JACK BERG would receive these checks from Investors and deposit them into bank accounts opened by BERG and to which only BERG had access. BERG also received a wire from an Investor into one of these bank accounts.

13.     It was further part of the scheme that WILLIAM JACK BERG did not utilize the funds BERG received from Investors to invest for the benefit of the Investor providing the funds.

14.     Instead, WILLIAM JACK BERG used the funds provided by Investors (for their believed investment in "W Holdings of Iowa" or "Excel Performance Management") for unauthorized purposes that were not for the benefit of the Investor providing the funds. These uses of monies that were unauthorized by the Investors and did not benefit the Investors included, but were not limited to, BERG expending monies for BERG's personal expenses and BERG making payments to some other Investors as purported "returns" or "dividends" on their prior funds provided despite those Investors' monies already being spent by BERG and not invested. The

personal expenses that BERG used Investor monies for included, but were not limited to, the following: purchasing vehicles, purchasing jewelry, paying for BERG's rent at a townhome in Waukee, paying for travel expenses, and paying for various other day-to-day expenses such as groceries, gas, clothing, and restaurants.

15. It was further part of the scheme that WILLIAM JACK BERG periodically provided some Investors with documents purporting to be "account statements" from W Holdings of Iowa or Excel Performance Management. These documents were created by BERG and contained false statements in that the documents purported that there was an investment account held for the benefit of the respective Investor and that the account contained significant balances for the Investor. In reality, as BERG well knew, there was no money in an account for the Investor, the Investor's monies had previously been spent by BERG for various unauthorized purposes that were not for the benefit of the Investor, and separate accounts were not being held for the various Investors.

16. It was further part of the scheme that WILLIAM JACK BERG made false statements and misrepresentations to Investors when Investors requested a return of all or some of their funds. BERG gave false reasons as to why the funds were not timely forthcoming to the Investors from Excel Performance Management by claiming that delays were a result of various internal administrative issues within the company and similar excuses. In reality, as BERG well knew, the Investors' monies were gone, no investments existed, and there were no administrative persons in these purported companies with whom BERG was communicating. BERG would

often respond to requests by Investors to withdraw some of their funds with various delay tactics until BERG had received and deposited a check from another Investor. BERG would then use that Investor's monies to satisfy the withdrawal request of the other Investor. When BERG could not acquire sufficient funding to cover withdrawal requests, BERG would often ignore the Investor request.

17.  Over a dozen different Investors provided checks to BERG payable to "W Holdings of Iowa" or "Excel Performance Management" (or wire transfers to same) for the purpose of funding the Investors' anticipated investments. Investor monies provided to BERG for investments in W Holdings of Iowa or Excel Performance Management exceeded $1,500,000.

### Counts 1 through 14
### (Wire Fraud)

18.  On or about the dates listed in the below table, in the Southern District of Iowa and elsewhere, the defendant, WILLIAM JACK BERG, for the purpose of executing the scheme and artifice described above, and attempting to do so, did transmit and caused to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, and sounds, including, but not limited to, the interstate wires described below for each count:

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 1 | August 7, 2020 | Data and information necessary to settle the deposit of a $45,706.42 cashier's check from Investor with initials R.T. payable to "Excel Performance Management" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |
| 2 | June 17, 2021 | Data and information necessary to settle the deposit of a $42,468.08 check from Investor with initials J.P. payable to "Excel Performance Manage" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |
| 3 | June 22, 2021 | Data and information necessary to settle the deposit of a $64,608.10 check from Investor with initials J.P. payable to "Excel Performance Manage" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |
| 4 | December 6, 2021 | Data and information necessary to settle the deposit of a $19,081.32 check from Investor with initials J.H. payable to "Excel Performance Management" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |
| 5 | December 9, 2021 | Data and information necessary to settle the deposit of a $49,684.82 check from Investor with initials D.H. payable to "Excel Performance Management" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 6 | February 14, 2022 | Data and information necessary to settle the deposit of a $75,000 check from Investor with initials M.F. payable to "Excel Performance Management" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |
| 7 | June 9, 2022 | Text messages between BERG and Investor with initials S.T. coordinating and arranging for S.T. to send BERG an investment check for S.T. payable to "Excel Performance Management". |
| 8 | July 18, 2022 | Text messages between BERG and Investor with initials S.T. coordinating and instructing S.T. to send BERG a wire of funds from S.T.'s bank to "Excel Performance Management" with the funds to go into BERG's checking account ending in -3513 at MidWestOne Bank. |
| 9 | July 18, 2022 | A wire transfer of $433,956.72 from Investor with initials S.T. into BERG's checking account ending in -3513 at MidWestOne Bank. |
| 10 | September 2, 2022 | Text messages between BERG and Investor with initials S.T. regarding S.T.'s concerns about not receiving documentation or a contract for recent funds provided to BERG. |
| 11 | November 9, 2022 | Data and information necessary to settle the deposit of a $55,000 check from Investor with initials D.R. payable to "W Holdings of Iowa" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |
| 12 | November 22, 2022 | Data and information necessary to settle the deposit of a $55,000 check from Investor with initials D.R. payable to "W Holdings of Iowa" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |
| 13 | December 12-14, 2022 | Text messages between BERG and Investor with initials M.F. coordinating and arranging for M.F. to send BERG an investment check for M.F. payable to "Excel Performance Management". |

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 14 | December 19, 2022 | Data and information necessary to settle the deposit of a $50,000 check from Investor with initials M.F. payable to "Excel Performance Management" into BERG's checking account ending in -3513 at MidWestOne Bank, which wire communication was routed from the Southern District of Iowa through a check-processing center outside of the State of Iowa. |

Each of the above counts is a violation of Title 18, United States Code, Section 1343.

## COUNT 15
## (Money Laundering Over $10,000)

19. Paragraphs 1 through 18 of this Indictment are realleged and incorporated as if set forth fully herein.

20. On or about February 18, 2022, in the Southern District of Iowa, the defendant, WILLIAM JACK BERG, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, involving criminally derived property of a value greater than $10,000, that is, BERG wrote a check from a W Holdings of Iowa LLC DBA Excel Performance Management account ending -3513 at MidWestOne Bank (the deposits of which were insured by the Federal Deposit Insurance Corporation) payable to "Anglo Diamond" in the amount of $37,343 for the purchase of a custom 14 karat white gold engagement ring featuring a 2.20 carat oval cut diamond and an additional 38 diamonds weighing 1.04 carats in total, said $37,343 being proceeds from a specified unlawful activity, that is, Wire Fraud as described in Count 6 of this Indictment.

This is a violation of Title 18, United States Code, Section 1957.

**THE GRAND JURY FINDS:**

**<u>NOTICE OF FORFEITURE</u>**

1.  Upon conviction of the offenses in violation of 18 U.S.C. § 1343, as set out in Counts 1 through 14 of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses.

2.  Upon conviction of the offenses in violation of 18 U.S.C. § 1957, as set out in Count 15 of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property involved in said offenses and any property traceable to such property.

3.  The property to be forfeited includes, but is not limited to:

    (a) a custom 14 karat white gold engagement ring featuring a 2.20 carat oval cut diamond and an additional 38 diamonds weighing 1.04 carats in total;

    (b) a custom 14 karat white gold diamond band featuring 13 natural round cut diamonds weighing 2.00 carats in total; and

    (c) a sum of money equal to the total amount of gross proceeds obtained as a result of these offenses, Counts 1 through 15, with such amount to be at least $1.5 million.

4.  If any of the property described above, as a result of any act or omission of any defendant cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the

United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

**A TRUE BILL.**

_____
FOREPERSON

Richard D. Westphal
United States Attorney

By: *[signature]*
Adam J. Kerndt
Assistant United States Attorney